# MANNING v. ELLICOTT.

CONTRACTS WITH THE UNITED STATES; SUBCONTRACTS; ASSIGN-
MENT; STATUTORY CONSTRUCTION.

1. An agreement by a sculptor that, in the event of an award to him
   by a Congressional commission of a contract for a certain statue
   for which he had submitted designs, he would enter into a con-
   tract with a contractor for stone work for the erection by the
   latter of a granite pedestal for such statue, and that, to the
   amount of such pedestal, the contractor should be made a party
   to the contract between the commission and the sculptor, is
   not void under either Sec. 3477, R. S. U. S., prohibiting the
   assignment of claims against the United States before their
   allowance, the ascertainment of the amount due, and the
   issue of a warrant for their payment, or Sec. 3737, R. S.
   U. S., providing that the transfer of a contract with the
   United States, or any interest therein, shall cause the annul-
   ment of the contract transferred so far as the United States
   are concerned.

2. That a contractor for doing certain work for the Government may
   make subcontracts, in the execution of the work undertaken,
   is nowhere forbidden; and neither Sec. 3477 nor Sec. 3737, R.
   S. U. S., applies to such case.

3. Where a contract is fairly open to two constructions, by one of
   which it would be lawful and by the other unlawful, the former
   must be adopted.

4. The provision in the agreement between the sculptor and the con-
   tractor that the latter should, to the amount of the pedestal
   be made a party direct to the contract between the commission
   and the sculptor, while not requiring the commission acting
   for the Government to accept or recognize the contractor as a
   party to the contract, is distinct and severable from the other
   terms of the contract, and may be rejected and the other pro-
   visions of the agreement remain good and enforceable.

No. 568. Submitted May 8, 1896. Decided June 1, 1896.

HEARING on an appeal by the plaintiff from a judgment
on a verdict directed by the court in an action for damages
for breach of a contract under seal. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an action on a contract, for an alleged breach thereof, entered into between the plaintiff, James F. Manning, a contractor for stonework and a builder of monuments, and the defendant, Henry J. Ellicott, a sculptor and designer of memorial statues. The defendant having designed and submitted for approval and acceptance, a model or design of the pedestal and statue of General Hancock, authorized to be erected in the city of Washington, under the acts of Congress of March 2, 1889 (25 Stat. 972), and March 3, 1891 (26 Stat. 980), he made certain proposals to the plaintiff for the construction of the pedestal, in the event that the design or model submitted by him was accepted by the commission or committee created by the act of Congress to act in the matter. The negotiation between the parties resulted in the following agreement:

"This agreement entered into this twenty-third day of April, A. D. 1892, by and between J. F. Manning, of the city of Washington, District of Columbia, party hereto of the first part, and Henry J. Ellicott, of the same place, party hereto of the second part, witnesseth: For value received, the party hereunto of the second part agrees to and with the party hereunto of the first part to enter into a contract for one granite pedestal for Hancock Statue, upon the award of contract by the commission appointed by Congress of the United States of America, to the party hereunto of the second part, the aforesaid party of the first part to be made a party to the contract direct with the aforesaid commission, to the amount of granite pedestal, as agreed upon by the parties hereto, at and for the price of twenty-three thousand ($23,000) dollars, for which amount the party hereunto of the first part agrees to furnish and erect granite pedestal, as per design furnished the aforesaid commission by the aforesaid party of the second part."

This agreement was executed under the hands and seals of the parties thereto, and was attested by one witness.

The designs of both pedestal and statue submitted by the defendant, having been approved and accepted by the commission, and the price therefor fixed at $49,000, a contract for the work was duly entered into between the Government of the United States, by its agents, and the defendant, and which contract has been executed and fully performed, though the pedestal was not constructed by the plaintiff, as agreed it should be.

The plaintiff assigns as a breach of the contract with him, that notwithstanding the defendant had received the award of the contract to furnish and build the pedestal and statue, as contemplated by the agreement between the plaintiff and defendant, the latter has refused to comply with the terms of such agreement and enter into a contract with the plaintiff for the furnishing and erection of said pedestal, or to make plaintiff a party with him to said contract with the Government, and that the defendant disabled himself from entering into such contract with the plaintiff, and from carrying out the same, by entering into a contract with persons other than the plaintiff, for the furnishing and building of said pedestal for the contemplated statue.

The defendant made defence by pleading specially matter supposed to be in discharge; but there is no question here on the pleading. At the close of the evidence for the plaintiff, the defendant moved the court for an instruction to the jury, that their verdict should be for the defendant; and that instruction was given, " upon the ground that said written agreement (between plaintiff and defendant) was void, as being in violation of law and against public policy." The plaintiff excepted, and hence this appeal.

*Messrs. A. A. & T. W. Birney* for the appellant:

1. It is claimed that the entire agreement between the parties to this case is void as being in conflict with Sections

3477 and 3737, R. S. U. S. The contract in this case does not fall under Section 3737 ; that statute provides that " no contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given, to any other party, and any such transfer shall cause the annulment of the contract or order transferred so far as the United States are concerned." This does not apply to the present case for three reasons, namely : 1st. When Ellicott made this agreement, he had no " contract or order or any interest therein " with or from the Government. 2d. His agreement did not transfer or pretend to transfer an interest in any contract or order, but merely provided for a subcontract. 3d. Had its purpose been to transfer an interest in a contract or order, the only result, under the statute, would have been to annul the transfer " so far as the United States are concerned." 4th. This contract is not of the kind contemplated or covered by the statute. *Hobbs* v. *McLean,* 117 U. S. 567.

As to the second and third reasons above given for the inapplicability of this section, the case of *Freedman's Savings Co.* v. *Shepherd,* 127 U. S. 494, is applicable. There, a lease made to the United States and a claim against the Government for rent under the same, had been assigned to a third party. It was held that such assignment was not of the kind contemplated by section 3737, because it was not within the mischief intended to be prevented, and that therefore it was valid.

Nor is the agreement under discussion affected by section 3477. This section is no more applicable to the contract in question than is section 3737, and for largely the same reasons.

In the case of *Freedman's Saving Co.* v. *Shepherd, supra,* the court held that an assignment of the claim for rent against the Government was not void under section 3477, and did not prevent the assignee from asserting his rights against third parties, because, as the court said : " The ob-

ject of the statute is to protect the Government and not the claimant."

It is evident from these authorities that the true test of what is an assignment or transfer under the two statutes considered, is whether the instrument gives, or pretends to give, to the assignee a right of action against the Government in his own right. We submit that there is nothing in the Manning-Ellicott agreement which brings it within this rule.

2. It is further claimed that the provision in the agreement by which Manning was to be made a party direct with the United States Commission to the extent of the amount to be paid him for the pedestal, was impossible of performance, and also that it was illegal, and therefore invalidated the contract. We submit that it was not impossible of performance, because the only meaning which can legally and reasonably be given to it is that Ellicott was to associate Manning with him in the contract with the Government when the same was to be finally made. To this the Government could have had no objection; it could as well contract with a firm as with an individual, and does so every day.

Moreover, if this clause calls for the doing of an impossible act, or even if it called for the doing of an illegal act, still its invalidity would not make invalid the remainder of the contract. The rule is, that " where there are contained in the same instrument distinct engagements by which a party binds himself to certain acts, some of which are legal and some illegal at common law, the performance of those which are legal may be enforced, though the performance of those which are illegal cannot." 3 A. & E. Ency. of Law, 887. And this rule has been extended to cover acts illegal by statute as well as at common law. *Pickering* v. *Railroad Co.,* L. R. 3 C. P. 250; *U. S.* v. *Bradley,* 10 Pet. 343; *Hynds* v. *Hays,* 25 Ind. 31, 39; *State* v. *Findley,* 10 Ohio, 51.

*Mr. A. T. Britton, Mr. Nathaniel Wilson* and *Mr. A. B. Browne* for the appellee:

The agreement sued on expressly provided that in event of award to defendant Ellicott, then plaintiff was "to be made a party to the contract direct with the aforesaid commission." The declaration admits that such contract was made "between the defendant and the United States of America by its said representatives, and said contract now exists and is in full force," and damages are demanded of defendant for his breach in failing "to make plaintiff a party with him to said contract." The parties agreed to do a thing prohibited by positive statute. Sec. 3737, U. S. Revised Statutes. The proposal was made by defendant alone. The award was to defendant alone. The agreement sued on expressly provides that future contract between them for the pedestal was contingent "upon the award of contract, by the commission appointed by Congress of the United States of America, to the party hereunto of the second part." Upon that award the United States necessarily contracted only with the party whose design had been submitted. Had defendant sought to admit plaintiff to "any interest therein," such action would have been in violation of this statute, and *ipso facto* caused the annulment of the contract.

This statute is based upon sound public policy and is rigidly enforced. Thereby the United States deals with one responsible party, without permitting strangers, without limit, to come in and assert contractual relations with the Government. The court below, in commenting thereon, justly observed that in the present instance it was to the interest of the United States that one person should erect the statue, the pedestal, and complete the entire work; otherwise, by recognizing the plaintiff's contention, parts of the statue, of the pedestal, its foundations, &c., could be made by many different parties and the sole, undivided responsibility imposed by the United States upon one individual by the

award and contract could be distributed among many, to the manifest public injury.

Section 3737, R. S., forbids assignments of *contracts.* Section 3477, R. S., forbids assignments of *claims* against the United States until allowance thereof, and warrant drawn for payment. Each section is strictly enforced by the courts. Commenting thereon, the Supreme Court in *Hobbs* v. *Mc-Lean,* 117 U. S. 567, 576, said: " They were passed in order that the Government might not be harassed by multiplying the number of persons with whom it had to deal, and might always know with whom it was dealing until the contract was completed and settlement made."

Section 3477 has been expounded in *United States* v. *Gillis,* 95 U. S. 407; *Erwin* v. *United States,* 97 U. S. 392; *Spofford* v. *Kirk,* 97 U. S. 484; *Goodman* v. *Niblack,* 102 U. S. 556; *Bailey* v. *United States,* 109 U. S. 432; *Railroad Co.* v. *United States,* 112 U. S. 733; *Butler* v. *Goreley,* 146 U. S. 363.

These cases apply the law to all voluntary transfers or assignments, making (*ex necessitate*) distinction only where such assignment occurs by operation of law, such as to heirs, devisees, or assignees in bankruptcy or insolvency. Yet such exception was denied operation by the court in *Railroad Co.* v. *United States, supra.*

Counsel for appellant insist that the agreement sued on did not transfer an interest in any contract or order, for none then existed, but provided merely for a subcontract. The terms of the agreement, admittedly prepared by appellant, wholly contradict their assertion. The language thereof is, " the aforesaid party of the first part to be made a party to the contract *direct* with the aforesaid commission, to the amount of granite pedestal," etc. This language is not capable of dual construction; the appellant meant precisely what he wrote, and his declaration avers defendant's breach of such agreement by his failure " to make plaintiff a party with him to said contract with said commission . . ."

and demands damages therefor. Hence what he asserts defendant failed to do is precisely what the law forbade.

The case of *Hobbs* v. *McLean*, 117 U. S. 567, cited by appellant, is not analogous in fact or conclusion.

The purpose and effect of the agreement in that case is the direct contrary of the purpose plainly declared by the agreement here sued on ; that in terms provides that appellant should be made a party *direct* with the United States in order to enable him to control the money to be received thereunder "to the amount of granite pedestal, as agreed upon by the parties hereto, at and for the price of $23,000." It can have no other meaning or effect.

*Freedman's Savings Bank* v. *Shepherd*, 127 U. S. 494, also cited by appellant has no application here. The service appellee was called upon to perform under his award and contract involved the ·highest order of talent and of a character peculiarly justifying the Government in dealing only with him, and in placing upon him the entire responsibility.

Mr. Chief Justice ALVEY delivered .the opinion of the Court :

The sole question presented on this appeal is, whether the agreement sued on, between the plaintiff and defendant, is such as is forbidden and rendered void, either by Section 3477 or by Section 3737, of the Revised Statutes of the United States. For if not, there can be no question of the right of the plaintiff to maintain an action thereon, unless the defendant can show a release or other matter of discharge.

The two sections of the Revised Statutes supposed to affect the validity of the agreement sued on, are as follows :

"Sec. 3477. All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers

of attorney, orders, or other authorities for receiving payment of any such claims, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof . . ."

"Sec. 3737. No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States."

At the time of the making of the contract in question there was no claim whatever against the United States to be transferred or assigned ; and therefore Section 3477 could not apply to a contract like the present. The agreement does not profess to transfer or assign any portion of an existing claim of the defendant against the United States. It simply contemplated an independent contract between the plaintiff and defendant, for doing a portion of the work that might be embraced in a contract that the defendant had proposed to make with the commission representing the Government. That a contractor for doing certain work for the Government may make subcontracts, in the execution of the work undertaken, is nowhere forbidden. Indeed, it is the every day practice, without question; and in large contracts, requiring division of labor, skill, and material, it is matter of necessity ; and is always understood in letting out such contracts by the Government. Neither section of the Revised Statutes referred to applies to such case. The Supreme Court, in the case of *Hobbs* v. *McLean,* 117 U. S. 567, 575, has clearly defined the character of the claims to which Section 3477 of the statute refers.

The claim, said the court, " is a right to demand money

from the United States.  Peck acquired no claim in any sense until after he had made and performed, wholly or in part, his contract with the United States.  Section 3477, it is clear, only refers to claims against the United States which can be presented by the claimant to some department or officer of the United States for payment, or may be prosecuted in the Court of Claims.  The section simply forbids the assignment of such claims before their allowance, the ascertainment of the amount due thereon, and the issuance of a warrant for their payment.  When the contract of partnership was made Peck had no claim which he could present for payment, or on which he could have brought suit. He, therefore, had no claim, the assignment of which the statute forbids.  It is so clear that the articles of partnership do not constitute such an assignment as is forbidden by the section under consideration, that it would be a waste of words further to discuss the point."  It is clear, therefore, that Section 3477 does not apply to the contract sued on in this action.

Nor does Section 3737 apply.  The contract sued on does not require of the defendant the doing of anything forbidden by that section of the statute.  There was no contract or order of the Government held by the defendant at the time that could have been transferred, and the agreement did not require such transfer to be made.  It contemplated a separate and subordinate contract as between the plaintiff and defendant, with a joinder of the plaintiff in the contract of the defendant with the Government as means of security to the plaintiff in respect to a part of the work to be done under a contract that might be awarded to the defendant.  It was not a transfer of a contract within either the letter or meaning of the statute, such as would place the plaintiff in the position and relation to the Government of assignee claiming under the defendant.  The Government would not be bound to recognize the plaintiff as a party to the contract with the defendant, nor as interested therein.  If, however,

the Government agents had thought proper to accept the plaintiff as a party to the contract, all objections would have been removed.

But, as said by the Supreme Court, in the case already referred to, if the contract sued on is fairly open to two constructions, the presumption is that it was made in subordination to and not in violation of Section 3737 ; and if it can be so construed consistently with the prohibition of the section, it should be so construed. For it is a well-settled rule of interpretation that where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted. *Hobbs* v. *Mc-Lean, supra.*

It is argued, however, by the defendant, that, as the agreement provides that the plaintiff should be made a party direct to the contract with the commission, to the amount of the pedestal, as agreed upon by the plaintiff and defendant, and as such term in the agreement could not be enforced, therefore the entire contract must be treated as void. It may, certainly, be conceded that the commission, acting for the Government, could not be required to accept or recognize the plaintiff as a party to the contract with them for the erection of the pedestal. But it does not follow that the entire contract between the plaintiff and defendant must therefore be treated as void. This term in the contract is distinct and severable from the rest of the terms therein, and it was not inserted for the benefit of the defendant, but as security for the plaintiff; and it may well be rejected, and the other provisions of the agreement remain good and enforceable. It did not in any respect form the consideration upon which the defendant was induced to enter into the agreement with the plaintiff; and in such case as the present, where there is nothing *malum in se,* the term or stipulation not valid or enforceable, whether so by the common law or by statute, may be rejected, and all of the other parts

9 Ct. App.—7

of the agreement remain in full force and operation. *United States* v. *Bradley,* 10 Pet. 343, 360 ; *Gelpcke* v. *City of Dubuque,* 1 Wall. 221 ; *Pickering* v. *Railroad Co.,* L. R. 3 C. P. 250.

It follows that the judgment appealed from must be reversed, and a new trial awarded.

*Judgment reversed, and new trial awarded.*